

# Missouri Court of Appeals

## Southern District

### Division One

MELISSA YOUNGBLOOD,      )
        )
      Appellant,      )
        )
      vs.      )      No. SD36100
        )      Filed:  April 29, 2020
STATE OF MISSOURI,      )
        )
      Respondent.      )

APPEAL FROM THE CIRCUIT COURT OF SHANNON COUNTY[1]

Honorable Kelly W. Parker, Judge

## AFFIRMED

Melissa Youngblood ("Youngblood") appeals from the motion court's judgment denying her Rule 29.15[2] motion to set aside her convictions of two counts of murder in the first degree. Youngblood claims in two points on appeal that the motion court clearly erred in denying her motion in that:  (1) Youngblood was "shackled" in front of the jury because she had a security device around her ankle; and (2) defense counsel was ineffective for failing to cross-examine

---

[1] Venue was transferred from Ripley County to Shannon County.

[2] All rule references are to Missouri Court Rules (2019).

Youngblood's daughter with evidence that the prosecutor "in gaining her cooperation, told her that he would be lenient toward and help [Youngblood]." Finding no merit to Youngblood's two points relied on, we deny the same and affirm the judgment of the motion court.

## Facts and Procedural Background

We recite the evidence in accord with the motion court's explicit and implicit determinations, including those regarding credibility. *See **Shockley v. State***, 579 S.W.3d 881, 892–93 (Mo. banc 2019). Other information is set out as necessary for clarity.

In 2010, Youngblood participated in two murders. She was charged with two counts of murder in the first degree, one count of burglary in the first degree, one count of arson in the first degree, and one count of armed criminal action.

A pre-trial deposition was taken of Youngblood's daughter ("daughter"). When asked if anybody had talked to her about "whether they were prosecuting your mother, or helping your mother or what their role was," daughter responded that the prosecutor "said he was supposed to be helping my mother." The prosecutor filed a motion in limine seeking to exclude this testimony. After hearing argument, the trial court sustained the motion.

The trial court also made a pre-trial ruling that during trial, Youngblood would wear a security device (an "ankle bracelet") around her ankle.

A jury trial commenced on January 28, 2013. Youngblood did not testify at trial. The jury found Youngblood guilty of two counts of murder in the first degree.[3] She was sentenced to concurrent sentences of life imprisonment without parole on each count. This Court affirmed the convictions on direct appeal in an unpublished statement. Mandate issued on May 30, 2014.

---

[3] Prior to trial, the State dismissed the burglary, arson, and armed criminal action charges.

2

Youngblood timely filed a *pro se* Rule 29.15 "Motion to Vacate, Set Aside or Correct the Judgment or Sentence" on August 14, 2014. Counsel was appointed on August 19, 2014, and was granted an additional thirty days to file an amended motion. An amended motion was timely filed on November 27, 2014. The amended motion alleged, in pertinent part, that Youngblood should not have been required to wear an ankle bracelet in front of the jury at trial; and that defense counsel was ineffective for failing to cross-examine Youngblood's daughter about her motivation to testify for the State following assurances that the State was seeking little or no prison time for Youngblood.

The motion court conducted an evidentiary hearing on February 1, 2019. Youngblood and her two trial attorneys testified. On April 4, 2019, the motion court entered its "Findings of Fact, Conclusions of Law, and Judgment" denying Youngblood's motion as "meritless, belied by the record, and/or not cognizable." This appeal followed.

### Standard of Review

A circuit court's judgment denying postconviction relief will be affirmed unless its findings and conclusions are clearly erroneous. Findings and conclusions are clearly erroneous only when this Court is left with a definite and firm impression that a mistake has been made.

To obtain postconviction relief on the basis of ineffective assistance of counsel, a movant must satisfy the two-prong *Strickland* [*v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] standard. A movant must first demonstrate that counsel's performance was deficient. Performance is deficient if it fails to rise to the level of skill and diligence that would be demonstrated by a reasonably competent attorney under similar circumstances.

A movant must then prove he was prejudiced by counsel's deficient performance. Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Reasonable probability requires a probability sufficient to undermine confidence in the outcome.

*McFadden v. State*, ---S.W.3d---, 2020 WL 1861425, at *2 (Mo. banc Apr. 14, 2020) (internal quotations and citations omitted). "The motion court's findings are presumed correct. This Court defers to the motion court's superior opportunity to judge the credibility of witnesses." *Shockley*, 579 S.W.3d at 892 (internal quotation and citation omitted).

## Analysis

### *Point I: Ankle Bracelet*

In her first point, Youngblood argues that the motion court clearly erred in denying her Rule 29.15 motion for post-conviction relief after an evidentiary hearing in that "Youngblood established that she was forced to proceed to trial while visibly shackled[.]"  In support, she suggests that "she and trial counsel . . . testified that the ankle bracelet was visible and not covered by clothing, and that . . .  the jurors could see her legs—and hence the ankle bracelet—under the table."

As relevant here, the motion court made the following findings on this issue:

Claims of trial court error are not cognizable in a Rule 29.15 proceeding. . . . Movant would have known of the error complained of at trial, and so there are no exceptional circumstances to permit review of the claim here.  Neither Movant nor counsel ever raised this concern on the record.

Here, despite Movant's assertions to the contrary, the court, and not the State, raised the possibility of using a restraint.  The court specifically referred to an ankle restraint, with the understanding that it would be non-visible.  The discussion arose after the court confirmed that Movant's motion to appear without visible shackling was granted.  No more conversation about the restraint was had on the record.

At the evidentiary hearing, trial counsel Anthony testified that she could not remember what kind of device Movant was wearing.  Both Movant and trial counsel Kondro testified that Movant was wearing an electronic security bracelet at trial.  It was fastened around her ankle by a small black strap and the electronic element was encased in a shallow rectangular black plastic box with dimensions of only several inches.

4

The testimony of both Movant and her attorneys reflected that Movant dressed in clothes she was given by her defense team, including both skirts and pants. Some articles of clothing rose above her ankle.

Mr. Kondro testified that during Movant's trial, Movant was seated at counsel table between her two attorneys and did not get up and move about the courtroom at any time while the jury was present. He indicated that the counsel table for the defense team was the further table of the two counsel tables from the jury. Movant did not present any testimony from jurors, or anyone else present in the courtroom other than her own attorneys, indicating that the jurors saw the ankle bracelet.

. . . .

Both attorneys testified that had they felt that the Movant was wearing what they deemed to be a 'shackle visible to the jury,' they would have objected, made a record, and requested that the problem be rectified.

The prohibition on shackling during a trial is limited to restraints that are actually visible to the jury. *Zink v. State*, 278 S.W.3d 170, 185-86 (Mo. 2009). As Movant was seated behind counsel table and between two other people at all times during the trial, Movant cannot prove her claim without any testimony from the jury confirming that they saw the ankle bracelet.

The cases to which Movant cites regard visible restraints or restraints that impede movement or communication. . . . Movant presented no evidence or law indicating that her electronic ankle bracelet, even if visible, was a 'restraint,' as it did not impede any movement or communication.

Nor did it resemble any 'shackles' with which jurors are familiar (handcuffs, belly chains, leg shackles) that inspire the kind of visceral reaction described in precedent.

Movant's first ground is denied as not cognizable and meritless.

(internal citations to the trial transcript omitted).

"Issues that could have been raised on direct appeal—even if constitutional claims—may not be raised in postconviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances." **Shockley**, 579 S.W.3d at 900 (internal quotation and citation omitted). This manner of claim was available to Youngblood on direct appeal, but Youngblood failed to raise it therein. Post-conviction relief is not the appropriate avenue for this

5

type of claim, and Youngblood fails to demonstrate the ***Shockley*** requirements in this instance. *See **id.*** Moreover, Youngblood failed in her burden of persuasion, in that the motion court did not believe the evidence necessary to prove her Rule 29.15 claim (*i.e.*, that the ankle bracelet was visible to the jury, and would have been understood by the jury as a restraint or shackle). *See **id.*** at 892. Youngblood fails to demonstrate that the motion court clearly erred in denying her Rule 29.15 motion on the basis alleged in her Point I, and the same is accordingly denied.

### Point II: Daughter's Testimony

In her second point, Youngblood argues that the motion court clearly erred in denying her Rule 29.5 motion for post-conviction relief after an evidentiary hearing in that "trial counsel failed to cross-examine the State's witness, who was [] Youngblood's minor daughter, with the fact that the prosecutor, in gaining her cooperation, told her that he would be lenient toward and help [Youngblood]."

The motion court made the following findings as relevant to this claim:

At [daughter]'s deposition, she was asked by trial counsel Anthony about speaking with someone from the Attorney General's Office. Daughter confirmed speaking to someone named Kevin, who told her about 'putting new charges on [the cases].' Trial counsel Anthony then asked [daughter] whether anybody at that meeting 'talk[ed] to you about whether they were prosecuting your mother or helping your mother or what their role was,' to which daughter responded 'Kevin said he was supposed to be helping my mother.' This single sentence is all the information from [daughter] that is available on the topic, as trial counsel Anthony did not follow up on this statement in the deposition, nor was [daughter] called as a witness at the evidentiary hearing.

At no point in the transcript did [daughter] indicate that she was cooperating with the State based on a promise that Movant would receive 'little to no time' as a result. Neither trial counsel testified that they believed that statement was made to [daughter]. The only person who testified to that statement is Movant, who acknowledged that she was not present for the meeting and was reiterating hearsay from another individual. **Given that Movant was facing trial for multiple counts of first-degree murder, for which the punishment is fixed at life or death, this court finds it incredible that anyone would indicate she was facing little to no time.**

6

At the evidentiary hearing, Movant did not present anyone who was present for the meeting in question.

. . . .

Had [daughter] been questioned about her meeting with prosecutor Zoellner, it would not have provided a viable defense. Nor was the reason why [daughter] felt compelled to tell the truth a central, controverted issue.

Further, as the State pointed out, the reference to 'helping the Movant,' came about during an explanation of plea/cooperation negotiations. Questioning [daughter] on the topic would have elicited evidence that Movant had refused an offer from the State, called for hearsay from prosecutor Zoellner, required the calling of another attendee at the meeting (as prosecutor Zoellner could not be called to testify in his own case), and cast Movant in a poor light for failing to cooperate.

Counsel did not act unreasonably for declining to cross-examine on a collateral issue that would have opened the door to unfavorable testimony.

While motivation for a witness to lie is certainly always relevant to a jury's determination, the situation at issue here is exactly the opposite. The State's indication to [daughter] that it was trying to help Movant does not provide a reason for [daughter] to *falsely implicate* the Movant, but rather only explains why she was willing to tell *the truth*.

It cannot be said that the outcome of the trial would have been different if the jury had been aware that [daughter] was told the State was trying to help her mother.

Movant's sixth ground is denied as meritless and belied by the record.

(internal case citations omitted) (internal citations to the record omitted) (bold emphasis added).

Ordinarily, the failure to call a witness will not support an ineffective assistance of counsel claim because the choice of witnesses is presumptively a matter of trial strategy. This presumption applies to trial counsel's decision not to impeach a witness. Movant has the burden of showing that the impeachment would have provided him with a defense or would have changed the outcome at trial.

*Shockley*, 579 S.W.3d at 912 (internal quotations and citations omitted). Here, Youngblood fails to demonstrate that the motion court clearly erred in finding that daughter's testimony would not have provided Youngblood with a defense or would have changed the outcome at trial. *See id*. Rather, as the motion court appropriately pointed out, the testimony was likely to bring out other

evidence which would have hurt Youngblood's case more than daughter's testimony (even if it could be properly adduced) was likely to have helped her case. Youngblood fails to demonstrate clear error in her Point II, and the same is accordingly denied.

The judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS